SEVEN CASES OF ECKMAN'S ALTERATIVE v.
UNITED STATES OF AMERICA.

SIX CASES OF ECKMAN'S ALTERATIVE v.
UNITED STATES OF AMERICA.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR
THE DISTRICT OF NEBRASKA.

Nos. 50, 51. Argued December 2, 1915.—Decided January 10, 1916.

Congress is not to be denied the exercise of its constitutional authority
over interstate commerce and of its power to adopt means necessary
and convenient to such exercise merely because those means have
the quality of police regulations. *Hoke* v. *United States*, 227 U. S. 308.

The Sherley Amendment of August 23, 1912, to the Food & Drugs Act
under which misbranding includes false and fraudulent statements
regarding curative effects of drugs is within the power of Congress
to regulate interstate and foreign commerce.

Such regulation of interstate commerce is within the power of Con-
gress whether the statement be contained in the original package
or on the containers of the article. See *McDermott* v. *Wisconsin*, 228
U. S. 115.

The legislative history of the Sherley Amendment shows why the word
"contain" was inserted therein.

The Sherley Amendment to the Food & Drugs Act does not by
reason of uncertainty operate as a deprivation of property without
due process of law under the Fifth Amendment, nor does it prevent
the laying of definite charge of violating it under the Sixth Amend-
ment, as it in terms requires that the statements to fall within its
prohibition must be false and fraudulent.

The phrase "false and fraudulent" as used in the Sherley Amendment
to the Food & Drugs Act must be taken with its accepted legal mean-
ing, and to condemn under the amendment it must be found that
the statements were put with the package with actual intent to
deceive.

An intent to deceive may be derived from facts and circumstances, but
it must be established, and can be established, by proof of their
falsity as to statements accompanying drugs, such as to the effect

that they have preventive and curative power over such diseases as pneumonia and tuberculosis.

Averments in a libel under § 8 of the Food & Drugs Act should receive a sensible construction. They must definitely charge the statutory offense of misbranding but if there is enough to apprise those interested in the goods that they were charged with misbranding because statements as to curative power accompanying the articles in interstate commerce were false and fraudulent, as stating they would cure diseases which they could not cure, and were made with intent to deceive, they are sufficient to sustain the libel.

THE facts, which involve the constitutionality, construction and application, of provisions of § 8 of the Food and Drugs Act as amended in 1912 in regard to misbranding of drugs, are stated in the opinion.

*Mr. Daniel W. Baker,* with whom *Mr. Francis D. Weaver* was on the brief, for plaintiffs in error:

The statute is a penal statute and must be strictly construed.

These libels do not state, or properly state, any violation of the Pure Food Law, as amended. They contain no proper statement of contents of the circular; there is no statement, nor is it contended, that the alleged statements mentioned in the libels anywhere appear on the original packages, or on the bottles themselves; there is no statement that the statements alleged to be in the circular are false.

Not only is there no statement of facts anywhere in the libels showing that the alleged statements contained in said circulars are fraudulent, but the statements in the libels negative that fact.

Numerous authorities in the state and Federal courts sustain these contentions.

*Mr. Assistant Attorney General Underwood* for the United States:

The Sherley amendment applies to statements in a circular contained within the original unbroken package.

The Sherley amendment is a constitutional regulation of interstate commerce.

The power of Congress over interstate commerce is complete.

Similar regulations of interstate commerce have been upheld by this court.

The Sherley amendment is not a regulation of matters of opinion. It condemns only fraudulent statements.

Such statements do not constitute matters of opinion.

The question here presented is not one of common-law interpretation, but of power of Congress.

The act is not violative of the Fifth or Sixth Amendment.

Congress may regulate interstate commerce for the protection of the public. This is a proper subject of regulation.

The Sixth Amendment does not apply to these proceedings *in rem*. This law satisfies the Sixth Amendment.

The allegations of the libel are sufficient.

Reasonable certainty is what the law requires.

The libel avers all material facts with certainty.

Numerous authorities sustain these contentions.

MR. JUSTICE HUGHES delivered the opinion of the court.

Libels were filed by the United States, in December, 1912, to condemn certain articles of drugs (known as 'Eckman's Alterative') as misbranded in violation of § 8 of the Food & Drugs Act. The articles had been shipped in interstate commerce, from Chicago to Omaha, and remained at the latter place unsold and in the unbroken original packages. The two cases present the same questions, the libels being identical save with respect to quantities and the persons in possession. In each case demurrers were filed by the shipper, the Eckman Manufacturing Company, which challenged both the sufficiency of the libels under the applicable provision of the statute and the constitutionality of that provision.

The demurrers were overruled and, the Eckman Company having elected to stand on the demurrers, judgments of condemnation were entered.

Section 8 of the Food & Drugs Act, as amended by the act of August 23, 1912, c. 352, 37 Stat. 416, provides, with respect to the misbranding of drugs, as follows:

"Sec. 8. That the term 'misbranded,' as used herein, shall apply to all drugs or articles of food or articles which enter into the composition of food, the package or label of which shall bear any statement, design, or device regarding such article, or the ingredients or substances contained therein which shall be false or misleading in any particular, and to any food or drug product which is falsely branded as to the State, Territory, or country in which it is manufactured or produced.

"That for the purposes of this Act an article shall also be deemed to be misbranded.  In case of drugs:

*    *    *    *    *    *    *    *

"Third.  If its package or label shall bear or contain any statement, design, or device regarding the curative or therapeutic effect of such article or any of the ingredients or substances contained therein, which is false and fraudulent."

The amendment of 1912 consisted in the addition of paragraph "Third," which is the provision here involved.

It is alleged in each libel that every one of the cases of drugs sought to be condemned contained twelve bottles, each of which was labeled as follows:

"Eckman's Alterative,—contains twelve per cent. of alcohol by weight, or fourteen per cent. by volume—used as a solvent.  For all throat and lung diseases including Bronchitis, Bronchial Catarrh, Asthma, Hay Fever, Coughs and Colds, and Catarrh of the Stomach and Bowels, and Tuberculosis (Consumption) . . . Two dollars a bottle.  Prepaid only by Eckman Mfg. Co. Laboratory Philadelphia, Penna., U. S. A."

And in every package, containing one of the bottles,
there was contained a circular with this statement:

"Effective as a preventative for Pneumonia."  "We
know it has cured and that it has and will cure Tuber-
culosis."

The libel charges that the statement "effective as a
preventative for pneumonia" is "false, fraudulent and
misleading in this, to-wit, that it conveys the impression
to purchasers that said article of drugs can be used as
an effective preventative for pneumonia, whereas, in
truth and in fact said article of drugs could not be so
used"; and that the statement, "we know it has cured"
and that it "will cure tuberculosis" is "false, fraudulent
and misleading in this, to-wit, that it conveys the impres-
sion to purchasers that said article of drugs will cure
tuberculosis, or consumption, whereas, in truth and in
fact said article of drugs would not cure tuberculosis, or
consumption, there being no medicinal substance nor
mixture of substances known at present which can be
relied upon for the effective treatment or cure of tuber-
culosis, or consumption."

The principal question presented on this writ of error
is with respect to the validity of the amendment of 1912.

So far it is objected that this measure, though relating
to articles transported in interstate commerce, is an
encroachment upon the reserved powers of the States, the
objection is not to be distinguished in substance from
that which was overruled in sustaining the White Slave
Act, c. 395, June 25, 1910, 36 Stat. 825. *Hoke* v. *United
States*, 227 U. S. 308.  There, after stating that 'if the
facility of interstate transportation' can be denied in the
case of lotteries, obscene literature, diseased cattle and
persons, and impure food and drugs, the like facility could
be taken away from 'the systematic enticement of and
the enslavement in prostitution and debauchery of
women,' the court concluded with the reassertion of

the simple principle that Congress is not to be denied the exercise of its constitutional authority over interstate commerce, and its power to adopt not only means necessary but convenient to its exercise, because these means may have the quality of police regulations. 227 U. S., pp. 322, 323. See *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, 215; *Hipolite Egg Co.* v. *United States*, 220 U. S. 45, 57; *Lottery Case*, 188 U. S. 321.

It is urged that the amendment of 1912 does not embrace circulars contained in the package, but only applies to those statements which appear on the package or on the bottles themselves; that is, it is said that the word 'contain' in the amendment must have the same meaning in the case of both 'package' and 'label.' Reference is made to the original provision in the first sentence of § 8 with respect to the statements, etc., which the package or label shall 'bear.' And it is insisted that if the amendment of 1912 covers statements in circulars which are contained in the package it is unconstitutional. Such statements, it is said, are not so related to the commodity as to form part of the commerce which is within the regulating power of Congress.

But it appears from the legislative history of the act that the word 'contain' was inserted in the amendment to hit precisely the case of circulars or printed matter placed inside the package, and we think that is the fair import of the provision. Cong. Rec., 62d Cong., 2d Sess., Vol. 48, Part 11, p. 11,322. And the power of Congress manifestly does not depend upon the mere location of the statement accompanying the article, that is, upon the question whether the statement is *on* or *in* the package, which is transported in interstate commerce. The further contention that Congress may not deal with the package, thus transported, in the sense of the immediate container of the article as it is intended for consumption is met by *McDermott* v. *Wisconsin*, 228 U. S. 115, 130. There the

court said: "That the word 'package' or its equivalent
expression, as used by Congress in sections 7 and 8 in
defining what shall constitute adulteration and what shall
constitute misbranding within the meaning of the act,"
(Food & Drugs Act) "clearly refers to the immediate
container of the article which is intended for consumption
by the public, there can be no question. . . . Limit-
ing the requirements of the act as to adulteration and
misbranding simply to the outside wrapping or box con-
taining the packages intended to be purchased by the
consumer, so that the importer, by removing and de-
stroying such covering, could prevent the operation of the
law on the imported article yet unsold, would render the
act nugatory and its provisions wholly inadequate to
accomplish the purposes for which it was passed." And,
after stating that the requirements of the act thus con-
strued were clearly within the power of Congress over the
facilities of interstate commerce, the court added that
the doctrine of original packages set forth in repeated
decisions, which protected the importer in the right to
sell the imported goods, was not "intended to limit the
right of Congress, now asserted, to keep the channels
of interstate commerce free from the carriage of injurious
or fraudulently branded articles and to choose appro-
priate means to that end." *Id.*, pp. 130, 131, 137.

Referring to the nature of the statements which are
within the purview of the amendment, it is said that a
distinction should be taken between articles that are
illicit, immoral or harmful and those which are legitimate,
and that the amendment goes beyond statements dealing
with identity or ingredients. But the question remains
as to what may be regarded as 'illicit' and we find no
ground for saying that Congress may not condemn the
interstate transportation of swindling preparations de-
signed to cheat credulous sufferers and make such prepara-
tions, accompanied by false and fraudulent statements,

illicit with respect to interstate commerce, as well as, for example, lottery tickets. The fact that the amendment is not limited, as was the original statute, to statements regarding identity or composition (*United States* v. *Johnson*, 221 U. S. 488) does not mark a constitutional distinction. The false and fraudulent statement, which the amendment describes, accompanies the article in the package, and thus gives to the article its character in interstate commerce.

Finally, the statute is attacked upon the ground that it enters the domain of speculation. (*American School of Magnetic Healing* v. *McAnnulty,* 187 U. S. 94) and by virtue of consequent uncertainty operates as a deprivation of liberty and property without due process of law in violation of the Fifth Amendment of the Constitution, and does not permit of the laying of a definite charge as required by the Sixth Amendment. We think that this objection proceeds upon a misconstruction of the provision. Congress deliberately excluded the field where there are honest differences of opinion between schools and practitioners. Cong. Rec., 62d Cong., 2d Sess., Vol. 48, Part 12, App., p. 675. It was, plainly, to leave no doubt upon this point that the words 'false *and fraudulent*' were used. This phrase must be taken with its accepted legal meaning, and thus it must be found that the statement contained in the package was put there to accompany the goods with actual intent to deceive,—an intent which may be derived from the facts and circumstances, but which must be established. *Id.* .676. That false and fraudulent representations may be made with respect to the curative effect of substances is obvious. It is said that the owner has the right to give his views regarding the effect of his drugs. But state of mind is itself a fact, and may be a material fact, and false and fraudulent representations may be made about it; and persons who make or deal in substances, or compositions,

alleged to be curative, are in a position to have superior
knowledge and may be held to good faith in their state-
ments.  *Russell* v. *Clark's Executors*, 7 Cranch, 69, 92;
*Durland* v. *United States*, 161 U. S. 306, 313; *Stebbins* v.
*Eddy*, 4 Mason, 414, 423; *Kohler Mfg. Co.* v. *Beeshore*,
59 Fed. Rep. 572, 574; *Missouri Drug Co.* v. *Wyman*, 129
Fed. Rep. 623, 628; *McDonald* v. *Smith*, 139 Michigan,
211; *Hedin* v. *Minneapolis Medical Institute*, 62 Minne-
sota, 146, 149; *Hickey* v. *Morrell*, 102 N. Y. 454, 463;
*Regina* v. *Giles*, 10 Cox, C. C. 44; *Smith* v. *Land & House
Corporation*, L. R., 28 Ch. Div. 7, 15.  It cannot be said,
for example, that one who should put inert matter or a
worthless composition in the channels of trade, labeled
or described in an accompanying circular as a cure for
disease when he knows it is not, is beyond the reach of
the law-making power.  Congress recognized that there
was a wide field in which assertions as to curative effect
are in no sense honest expressions of opinion but con-
stitute absolute falsehoods and in the nature of the case
can be deemed to have been made only with fraudulent
purpose.  The amendment of 1912 applies to this field
and we have no doubt of its validity.

With respect to the sufficiency of the averments of the
libels, it is enough to say that these averments should
receive a sensible construction.  There must be a definite
charge of the statutory offense, but we are not at liberty
to indulge in hypercriticism in order to escape the plain
import of the words used.  There is no question as to the
adequacy of the description of the article, or of the ship-
ments, or of the packages.  It is said that there was no
proper statement of the contents of the circular.  But the
libels give the words of the circular and we think that the
allegations were sufficient to show the manner in which
they were used.  The objection that it was not alleged that
the statements in question appeared on the original
packages or on the bottles themselves, as already pointed

out, is based on a misconstruction of the statutory provision.    The remaining and most important criticism is that the libels did not sufficiently show that the statements were false and fraudulent.    But it was alleged that they were false and fraudulent, and with respect to tuberculosis it was averred that the statement was that the article 'has cured' and 'will cure,' whereas 'in truth and in fact' it would 'not cure,' and that there was no 'medicinal substance nor mixture of substances known at present' which could be relied upon to effect a cure.    We think that this was enough to apprise those interested in the goods of the charge which they must meet.    It was, in substance, a charge that, contrary to the statute, the article had been made the subject of interstate transportation with a statement contained in the package that the article had cured and would cure tuberculosis, and that this statement was contrary to the fact and was made with actual intent to deceive.

*Judgments affirmed.*

MR. JUSTICE MCREYNOLDS took no part in the consideration or decision of these cases.