**U. S. NATURE PRODUCTS CORP.,**
**Plaintiff,**

v.

**Robert SCHAFFER, Postmaster, New York, New York, Defendant.**

United States District Court,
S. D. New York.

Oct. 28, 1954.

The Postmaster General charged the plaintiff with conducting a scheme for obtaining money through the mails by means of false advertising representations and promises in violation of Sections 259 and 732 of Title 39, U.S.C.A.

A hearing was held in Washington, D. C. at which plaintiff was represented by counsel, and after a determination by the hearing examiner on July 15, 1954 that a fraud order should issue, and an administrative appeal taken therefrom, in which the Deputy Postmaster General, on September 13, 1954, affirmed the decision of the hearing examiner, a fraud order was issued instructing Robert Schaffer, the Postmaster of New York, N. Y., to return to the senders any mail directed to the plaintiff, with the words, "Fraudulent: Mail to this address returned by order of Postmaster General", stamped thereon.

Plaintiff's complaint alleges that the interference of the defendant prevents plaintiff from pursuing its lawful business; and that such interference and acts of defendant constitute a deprivation of property without due process of law, in violation of the Fifth Amendment to the Constitution, and prays that a temporary and permanent injunction be granted.

The government contends that plaintiff's complaint is deficient in that it has not attacked the sufficiency of the conclusions reached by the hearing examiner, and, therefore, not having raised any questions going to the merits of the determination by the post office, has failed to state a cause of action upon which an injunction can be predicated. See Hamilton Watch Co. v. Benrus Watch Co., Inc.[1] The government further contends that the failure of the complaint to attack the procedure of the hearing or the evidentiary sufficiency of any part of the fraud order, other than the mere statement that the Postmaster was wrong produces insufficient grounds for review of an executive order. Leach v. Carlile.[2]

Milton A. Bass, New York City, for plaintiff.

J. Edward Lumbard, U. S. Atty., for the Southern Dist. of N. Y., New York City, for defendant, Robert W. Sweet, Asst. U. S. Atty., New York City, of counsel.

DAWSON, District Judge.

Plaintiff brings this action to enjoin Robert Schaffer as the Postmaster of New York, N. Y. from carrying into effect a "fraud order" of the Postmaster General.

1. 2 Cir.1953, 206 F.2d 738.

2. 1922, 258 U.S. 138, 42 S.Ct. 227, 66 L. Ed. 511.

By the Administrative Procedure Act,[3] judicial review is granted of every final agency determination for which there is no other adequate remedy in any court. The administrative record of the proceedings below is before me with the complaint. Because the nature of the order from which relief is sought is such that delay conceivably may extinguish plaintiff's existence, which includes other phases of its business operation not concerned with the present action, and inflict upon it irreparable harm due to the return of its mail stamped "Fraudulent", the dismissal of this complaint without prejudice because of a poorly drawn pleading, would be tantamount to a denial to plaintiff of his remedy in court. I need not adopt such a course where it appears from the administrative record that plaintiff has a cause of action and is entitled to relief.

Plaintiff sells through the mails a product called "Numal". It also conducts a proprietary business with drug wholesalers. "Numal" is sold as an appetite builder and food supplement. The major components of the product are listed on its label as Vitamin $B_1$, Vitamin $B_2$, Vitamin D, and Vitamin $B_{12}$, malt diastase, tricalcium phosphate, iron pyrophosphate, sugar and cocoa with vanilla flavoring. It was advertised in magazines and periodicals. A typical advertisement (a copy of which is the basis of the administrative determination) pictured a pulchritudinous woman in the arms of a well developed male, both attired in bathing suits, with a heavy type caption underneath "Skinny Girls Don't Have Oomph!" Underneath this follows the statement "It takes those extra lbs of solid flesh to 'bring out' your natural curves." Then follows the body of the advertisement which states:

"If you're otherwise healthy but skinny, scrawny, rundown and lbs. underweight, try correcting this common mistake in eating.

"There are three essential substances that many thin, scrawny and undernourished girls may fail to get in sufficient quantity from the food they eat. These substances are Vitamin $B_1$, calcium phosphate and iron. If, like thousands of others, you are underweight without organic cause * * * never seem to gain a pound * * * are so thin that you look gangling and gawky from insufficient amounts of these precious elements, don't get discouraged.

"You may find that by correcting this simple mistake in eating you can easily add firm solid flesh * * extra alluring pounds that help bring out those natural eye-catching curves. A simple and easy way is to try the amazing new product called Numal that supplies, in significant amounts, the Vitamin $B_1$, calcium phosphate and iron needed in the daily diet. Plus a food that in itself is a great help in adding extra pounds.

"Take 1 heaping teaspoonful of Numal 3 times a day. It is pleasant, assimilable and easy to take. You will get the equivalent in Vitamin $B_1$ content of 34 cakes of average moist baker's yeast * * * the iron equivalent of 15 pounds of tomatoes or $1\frac{2}{3}$ pounds of spinach or 9 pounds of boiled beets and the calcium equivalent of $\frac{4}{5}$ths pint of fresh cow's milk, the phosphorus content of 1 glass.

"Remember, if you don't get a sufficient quantity of Vitamin $B_1$ in your daily diet, you may suffer loss of appetite. And without sufficient iron, the element that helps build rich red blood, you may be rundown, pale, weak and listless. You need calcium phosphate for sound teeth and sturdy bones."

In its administrative complaint, the Post Office Department alleged that the plaintiff here, by means of false pretenses, sold "Numal" through the mails;

---

3.  5 U.S.C.A. § 1009(c).

and that the said advertisements fraudulently represented:

"a. That when used as directed by 'Skinny Girls' and 'Skinny Men' 'Numal' will 'add firm solid flesh' and add 'extra alluring pounds that help bring out those natural eye-catching curves';

"b. That 'if you are skinny, gangling and bony' the use of the said 'Numal' as directed will 'bring out' 'your natural curves' and give users a healthy, normal and attractive appearance;

"c. That the use of the said 'Numal' as directed by 'skinny' persons will add firm solid flesh to fill out the areas where such flesh is desired;

"d. That 'If * * * you (the user) are underweight without organic cause * * * never seem to gain a pound * * * are so thin that you look gangling and gawky', the use of the said 'Numal' as directed will increase the weight of said users so that they will secure proportions comparable to the persons depicted in the advertisements of the said respondent."

The decision of the Hearing Examiner which was approved by the Deputy Postmaster General, on appeal, states:

"It is obvious from the testimony of the Solicitor's medical witness that a person underweight without organic cause, will not become physically attractive or alluring by using 'Numal' * * * As to the clinical tests conducted with reference to the questioned product, even if it had been shown that the data in the documents received in evidence, namely, the statistical information, was based upon proper supervised tests, it does no more than show that after a period of three months there was an average weight increase of seven pounds * * * According to the proof presented by the Respondent, if the testimony of the chemist be considered competent, merely having an improved appetite, an ability

to eat more and a gain of weight by using 'Numal' is far different from what the Respondent promises in its advertisement."

The evidence for plaintiff may not have been well presented at the administrative hearing. However, it is clear from reading the opinion and the record that the fraud order was based not on an assertion that the facts stated in the advertisement were fraudulently represented, but rather on the ground that even assuming these facts, the use of the product would not make the users as physically attractive with "natural curves" as those depicted in the advertisement.

The medical expert for the Solicitor of the Post Office Department testified, as is shown in the opinion, substantially as follows:

"That the basic cause of underweight is that of the caloric intake being less than the caloric requirement;

"That the ingredients contained in 'Numal' when taken with a glass of milk three times a day would add at the most approximately five hundred calories a day which includes four hundred fifty calories obtained from the milk consumed, and that in a week's time a gain of approximately one pound might occur;

"That a person who has a constitutional diathesis for thinness, i. e., has difficulty in putting on weight, would by taking 'Numal' probably have his appetite decreased because of the filling effect of the milk consumed;

"That even if weight is added, it might well be to areas of the user's body which would result in a person being considered less alluring or attractive than before the increase of weight occurred."

This witness testified that in cases of serious deficiencies of Vitamin $B_1$, a person would have a depression of appetite, and underweight as a consequence thereof. There was evidence that Vitamin $B_1$ is considered an appetite stimulant.

Insofar as the Solicitor's witness testified that the taking of the product with milk, as indicated, will result in increased weight, it would tend to support the assertion that the product would be a food supplement. Insofar as the product provides some Vitamin B$_1$, there was evidence that it would tend to reduce a depression of appetite. The testimony of this doctor that "insofar as underweight persons are concerned, it is difficult for them to ingest a sufficient number of calories to add weight", is worthy of little credence. The product was not advertised as a cure for underweight persons who are not otherwise healthy or who are suffering from organic troubles. To say that a healthy thin person cannot gain weight by eating more is utter nonsense.

Of course, it is equally nonsensical to suggest that merely by putting on weight, a person will necessarily get "extra alluring pounds that help to bring out those natural 'eye-catching' curves." All too frequently, the curves appear at portions of the body frame that might be better with less curves. However, is this type of representation fraudulent? Or is it merely that type of hyperbole that the public is well accustomed to take as such? Is it "fraud" or is it "puffing"?

■ In the case of post office fraud orders, the Supreme Court has properly pointed out that "proof of fraudulent purpose is essential * * *. Consequently fraud under the mail statutes is not established merely by proving that an incorrect statement was made." Reilly v. Pinkus.[4] The Court pointed out that the Federal Trade Commission has authority to issue cease and desist orders in cases like this without findings of fraud. It said:

"Unlike the Postmaster General, the F.T.C. cannot bar an offender from using the mails, an order which could wholly destroy a business. * * * The strikingly different consequences of the orders issued by the two agencies on the basis of analogous misrepresentations emphasize the importance of limiting Postoffice Department orders to instances where actual fraud is clearly proved."

The issue, therefore, is not whether the claims made in the advertisement may have been exaggerated or even whether they are incorrect and misleading. The issue is whether they are "fraudulent" in fact. We must be careful not to allow a natural distaste for the type of advertising that appears in this case to lead us to the conclusion that the plaintiff should be put out of business. We are not to set ourselves up as censors of the advertising but merely to ascertain whether fraud exists.

The factual representations of the advertisement that the product taken as directed will provide a dietary supplement that may result in increased weight are not controverted. So much of the advertisement as states matters of fact has not been shown to be fraudulent. The most that can be said is that there may be a difference of opinion as to how effective the product will be in adding weight. A representation that extra pounds will make a thin person more attractive is not a fraudulent representation of a fact; it is a matter of opinion.

■ But is the administrative determination entitled to such weight that a court should not overturn it? Where the determination of the Postmaster General is not supported by proof of actual fraud in fact, the courts are not bound by the administrative determination and have power in a proper proceeding to grant relief. American School of Magnetic Healing v. McAnnulty, 1902, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90; Jeffries v. Olesen, D.C.S.D.Cal.1954, 121 F.Supp. 463, 474.

■ To sustain a fraud order of the Post Office Department, the government must show by substantial evidence not only that the claims made are unfounded, Leach v. Carlile, 1922, 258 U.S. 138, 42 S.Ct. 227, 66 L.Ed. 511; Reilly v. Pinkus, 1949, 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63, but further an actual intent to de-

4. 1949, 338 U.S. 269, 70 S.Ct. 110, 114, 94 L.Ed. 63.

ceive, Seven Cases v. United States, 1916, 239 U.S. 510, 517, 36 S.Ct. 190, 60 L.Ed. 411; Reilly v. Pinkus, supra.

■ Fraud is not presumed. It must be consciously shown under circumstances not susceptible of other interpretations. Tucker's Lessee v. Moreland, 1836, 10 Pet. 58, 35 U.S. 58, 9 L.Ed. 345; United States v. Wunderlich, 1951, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113. There must be an intent to deceive. While an intent to deceive might be inferred from the universality of scientific belief that advertising representations are wholly unsupported, Reilly v. Pinkus, supra, there is nothing in this record to indicate a universality of scientific belief that "Numal" may not aid one to put on weight.

Defendant argues that a similar situation existed in Shaw v. Duncan, 10 Cir., 1952, 194 F.2d 779, and a fraud order was sustained. In the Duncan case, the unqualified testimony of the government's medical witnesses was that the product was valueless from both a practical and scientific viewpoint. It was therefore held that not only had the government met its burden by showing substantial evidence of false statements, but that fraudulent intent could be inferred from the marketing of a product that was valueless.

■ This is not the situation with which we are here confronted. The testimony is uncontradicted that the vitamin and mineral contents of "Numal" are useful dietary supplements which may have some effect in increasing weight. However, increase in weight may not always occur and if it does, it may not be in the right places. These are factors of which any layman can easily take cognizance. Cf. Farley v. Heininger, 1939, 70 App.D.C. 200, 105 F.2d 79, 84. There was evidence that plaintiff had received expert opinions that the product was a good product for malnutrition and would tend to increase weight in a healthy person when taken in accordance with the directions. These opinions may not be shared by all scientific authorities but there is no dispute that plaintiff received them and relied upon them. No actual fraudulent intent on his part was established.

A careful study of the entire administrative record leads me to the conclusion that the Post Office Department has not met the legal burden of proof in proving fraud in fact or fraud in intent.

■ As was said in Jeffries v. Olesen, supra [121 F.Supp. 473]:

"Throughout more than half a century the Supreme Court has consistently held that in such a case—a case wherein there is lacking either the essential element of falsity in fact or the equally essential element of fraud in intent and purpose—a fraud order is beyond the lawful authority conferred upon the Postmaster General under 39 U.S.C.A. §§ 259, and 732."

I so find here.

I make the following conclusions of law:

1. That the Postmaster General has not, by substantial evidence, shown that the statements by the U. S. Nature Products Corp., in advertisements, are in fact false.

2. That the Postmaster General has not shown by substantial evidence an intent on the part of the U. S. Nature Products Corp. to deceive in its advertisements with respect to its product "Numal".

3. That there was no violation of Sections 259 and 732 of Title 39, U.S.C.A.

4. That the "fraud order" in effect against the plaintiff U. S. Nature Products Corp. will do it irreparable harm.

5. That the preliminary injunction prayed for in the complaint should be granted.

Settle order.