**OWEN LABORATORIES, INC.,**
Plaintiff-Appellee,

v.

**Carl A. SCHROEDER, Postmaster, Chicago, Illinois, Defendant-Appellant.**

No. 12959.

United States Court of Appeals
Seventh Circuit.

Nov. 28, 1960.

---

Robert Tieken, U. S. Atty., Chicago, Ill., Howard E. Shapiro, Attorney, Appellate Section, U. S. Department of Justice, Washington, D. C., George Cochran Doub, Asst. Atty. Gen., Samuel D. Slade, Washington, D. C., for appellant.

Morton J. Harris, Chicago, Ill., Milton A. Bass, New York City, Bass & Friend, New York City, for appellee.

Before HASTINGS, Chief Judge, SCHNACKENBERG, Circuit Judge, and PLATT, District Judge.

HASTINGS, Chief Judge.

This is an appeal from an order and judgment of the district court declaring a Post Office Department fraud order to be null and void and enjoining the Postmaster at Chicago, Illinois (Postmaster), defendant-appellant, from enforcing its terms.

The fraud order was based upon a determination by the Judicial Officer of the Post Office Department (Department) that Owen Laboratories, Inc. (Owen), plaintiff-appellee, was conducting a fraudulent enterprise through the mails. Under the terms of the order, mail addressed to Owen was to be returned to the sender stamped "fraudulent," and money orders drawn in its favor were not to be honored, with the exception of mail and money orders which could be shown to be unconnected with the fraudulent activity.

The district court held that the order was not supported by substantial evidence, in that the record before the Department did not warrant an inference of fraud under the standards of Reilly v. Pinkus, 1949, 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63. The error relied upon arises out of this ruling.

The Administrative Proceedings

A complaint was filed against Owen on August 15, 1957 by the Department, charging it with conducting a fraudulent enterprise through the mails in violation of Title 39, U.S.C.A. §§ 259 and 732, by offering for sale by mail order a product called "Enerjol." (H. E. Docket 5/143) Owen represented its product to be a vitamin and dietary supplement containing "royal bee jelly"[1] and "oyster concentrate."[2] Owen claimed unusual and extraordinary therapeutic powers for "Enerjol." The complaint alleged that the advertising claims made on behalf of this product materially misrepresented its value and efficacy.

On September 26, 1957, Owen, through H. L. Owen, executed and filed an affidavit of agreement to the effect that it would refrain from advertising the claims for its product "Enerjol" which were specified in the complaint as grounds for the charge of fraud. The agreement further provided for a hearing upon notice if the Department should receive evidence showing a violation of the agreement. There was another pro-

1. Royal jelly was shown to be a special kind of food, derived from the salivary glands of bees, fed by the workers to the larvae of queen bees.

2. Oyster concentrate was shown to be a descriptive term for one of the components of "Enerjol."

vision that *the acceptance of the agreement should not be construed as an approval of any past or future business enterprise conducted by Owen.* On the basis of this affidavit of agreement, further proceedings were indefinitely postponed.

On January 22, 1958, the Department filed a motion for reinstatement of the complaint, charging therein a breach of the settlement agreement. After a full hearing and consideration of all issues raised by the motion for reinstatement and the responsive pleadings filed thereto, the hearing examiner filed his written initial decision on July 1, 1958, holding that "Complainant has failed to establish breach by Respondents of said affidavit, [and] it is recommended that this proceeding be dismissed." Accordingly, an order was entered dismissing the proceeding without prejudice.

On August 20, 1958, a new proceeding was initiated by the Department (H.E. Docket ⅓₉), charging Owen with making fraudulent claims in its advertising for its product "Enerjol" in terms different from those proscribed by the earlier affidavit of agreement. The advertising material under attack in this second proceeding is the same material considered upon the Department's attempt to reinstate the first proceeding.[3] However, the complaint is not the same as the one filed in the earlier proceeding since it makes new charges. In its answer to the complaint, Owen stated that it would neither admit nor deny the allegations that the statements contained in its advertising were false; it specifically denied any fraud or intent to deceive. In addition, Owen filed an affirmative defense of *res administrata* based on the ground that the issues between the identical parties had been fully determined in the first proceeding culminating in the dismissal without prejudice of the motion for reinstatement of the first complaint.

Under Rule 201.8(c) of the Post Office Department Rules of Procedure (23 Fed. Reg. 2794), failure to deny an allegation in a complaint is deemed to be an admission of the matter alleged. In view of this rule, at the administrative hearing Owen did not deny the falsity of its advertising claims, and the factual issue tried was whether Owen made its false claims *with an intent to deceive.* To establish this intent to deceive, at the hearing the Department relied upon the advertising matter attached to its complaint and the testimony of its expert witness, Dr. Kenneth C. Campbell. At the conclusion of Dr. Campbell's testimony, both parties rested; Owen did not introduce any evidence at the hearing.

After considering the evidence of Dr. Campbell and the various contentions raised by Owen during the hearing, the hearing examiner filed his initial deci-

---

3. According to the instant complaint, Owen's advertisements claimed:

"a. That the respondent's product called 'Enerjol' capsules will extend 'normal healthy powers and bodily functions' of users 'far into the years well beyond our prime' by reason of the 'royal jelly' content of said preparation;

"b. That the use of the said 'Enerjol' capsules as directed 'combats ills of old age', that is to say prevents chronic old age diseases and conditions by reason of the 'royal jelly' content of said preparation;

"c. That the 'royal jelly' content of respondent's product 'Enerjol' capsules increases physical 'vigor and vitality' to users;

"d. That the respondent's product 'Enerjol' capsules, when taken as direct- ed, will materially 'increase' 'sex vitality' in users due to its 'royal jelly' and 'oyster concentrate' ingredient;

"e. That the respondent's product 'Enerjol' capsules, when taken as directed, will materially lengthen the life of the user, due to its 'royal jelly' content;

"f. That the 'royal jelly' content of the respondent's product 'Enerjol' capsules adds a substantial and material therapeutic effect to the other ingredients in said product;

"g. That the 'oyster concentrate' content of respondent's product 'Enerjol' capsules adds a substantial and material therapeutic effect to the other ingredients in said preparation in the stimulation of the glands all over the body.' "

sion on December 24, 1958 concluding that Owen was conducting a fraudulent scheme as charged in the complaint and recommending the issuance of a fraud order. On appeal by Owen to the Department's Judicial Officer, this recommendation was affirmed on April 10, 1959, and the fraud order issued.

### District Court Proceedings

Following the issuance of the fraud order, Owen brought this action in the district court on April 17, 1959 by filing a complaint for a permanent injunction to restrain the Postmaster at Chicago, Illinois, from enforcing the postal fraud order in question. The complaint charged, *inter alia,* that the fraud order was not supported by substantial evidence showing an intent to deceive; that material errors were committed in the administrative proceedings; and that such proceedings were conducted under Rules of Practice, Procedure and Organization which were in conflict with and violated provisions of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. Postmaster answered in denial and filed a certified copy of the administrative record before the Department.

Thereafter, Owen moved for summary judgment, stating that the action did not involve questions of fact but raised only questions of law. Treating the case as submitted on cross-motions for summary judgment, the district court, on consideration of the administrative record before it, concluded "that there was no substantial evidence in the record to support the finding of an intention to deceive, [and therefore] it is unnecessary to consider the other issues presented by Owen." A judgment order was entered below granting summary judgment in favor of Owen; denying Postmaster's motion for summary judgment; declaring the fraud order null and void; and permanently restraining and enjoining the enforcement of the fraud order. This appeal followed.

In resolving the sole issue before us on this appeal, whether the evidence before the Department was sufficient under the test of Reilly v. Pinkus, 1949, 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63, to support the fraud order, we must first look to the record in the administrative hearing.

Owen's product was advertised in a manner to make extravagant claims for it as a therapeutic agent designed to relieve a broad range of human ills akin to a host of tired, sick or aging human beings in search of an elixir of life, a panacea for their physical shortcomings. That the thirst for such relief promotes credulity among the suffering needs no further demonstration. Indeed, for the purposes of this action Owen does not deny the falsity of its claims; it is content to rest on its defense that the Department has not sufficiently established an intent to deceive.

To prove intent to defraud, the Department introduced the evidence of Dr. Kenneth C. Campbell, a physician testifying as an expert medical witness specializing in the evaluation of claims for drugs and pharmaceuticals for the Food and Drug Administration. We have reviewed the record of Dr. Campbell's testimony, and in relevant part it may be summarized in the following manner.

Dr. Campbell testified that the "consensus of present day medical opinion" is that both "royal jelly" and "oyster concentrate" are worthless for the therapeutic purposes claimed by Owen in its advertising; that by "consensus of present day medical opinion is meant the majority of doctors in this country"; that "I don't believe there would be any difference of medical opinion among recognized practitioners in various sections of the globe"; that, in his study of the field, he had found some difference of opinion throughout the world with respect to the therapeutic value of "royal jelly," but he knew of no scientific reports by informed scientists reporting the value of "royal jelly" for the various conditions set forth in Owen's advertising; and that "if royal jelly would be effective for one half of those conditions, it would be the greatest contribution to

the science of medical therapeutics in the past century."

Dr. Campbell further testified that his information was based upon a study of technical literature furnished to him by the Research and Reference Branch of the Food and Drug Administration; upon his discussions with the Chief of the Division of Apiculture at Beltsville [Agricultural Experimental Station], who "is as familiar with royal jelly as anybody"; upon discussions with members of the staff of the Food and Drug Administration who had interviewed persons investigating the nature of "royal jelly"; and upon discussions with Dr. Townsend of the Banning Institute, a chemist researching "royal jelly."

■ Owen refused to present any evidence on its own behalf to contradict or refute the testimony of Dr. Campbell. Based upon our review of this record, we are compelled to conclude that there was substantial evidence to support the Department's finding of fraud. We hold that the district court erred in ruling to the contrary.

The district court in a well-reasoned memorandum opinion held that the "testimony of Dr. Campbell did not establish a 'universality of scientific belief' with reference to the efficacy of Owen's product or its ingredients, and therefore the Trial Examiner erred in concluding that Owen intended to deceive when it advertised falsely." The district court was moved to do this because the "testimony of Dr. Campbell does not refer to the opinions of scientists who are not physicians." It further stated that Dr. Campbell qualified his testimony by restricting his assertions to medical opinion; that he did not define what he meant by "informed medical opinion" or by referring to a physician "of standing."

We are of the opinion that Dr. Campbell's testimony demonstrates that he had in part, at least, relied upon the opinions of scientists who are not physicians. We do not believe the holding in Reilly v. Pinkus, supra, requires a finding favorable to Owen. On the contrary,

it would seem to afford the basis for an affirmance of the fraud order in so far as Dr. Campbell's uncontradicted testimony is concerned.

In Reilly v. Pinkus, medical testimony was introduced by both parties in the administrative hearing; this was the only scientific testimony in the record, and it was conflicting. Relying upon the rule laid down in American School of Magnetic Healing v. McAnnulty, 1902, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90, the district court enjoined enforcement of the fraud order. 71 F.Supp. 993; see also, Pinkus v. Walker, D.C., 61 F. Supp. 610. The court of appeals affirmed substantially on the same ground. 3 Cir., 170 F.2d 786. The Supreme Court summarized the holding of the district court to be that the evidence was insufficient to support the fraud order, asserting that there was "no exact standard of absolute truth" against which the advertisements could be measured, and that "the testimony of the two doctors on which the Government's case rested was reduced by the conflicting testimony of respondent's witness to the status of mere opinion." Reilly v. Pinkus, supra, 338 U.S. at page 272, 70 S.Ct. at page 112.

In passing upon this holding, the Supreme Court said:

"The McAnnulty holding did not go so far. We do not understand or accept it as prescribing an inexorable rule that automatically bars reliance of the fact-finding tribunal upon informed medical judgment every time medical witnesses can be produced who blindly adhere to a curative technique thoroughly discredited by reliable scientific experiences. * * *

"In this case there is conflict, though slight, as to whether kelp or iodine is valueless as a weight reducer. But even if we assume that medical opinion is yet in a state of flux on this question, we think that there was sufficient evidence to support the findings that the efficacy of the 'Reducing Plan' as a whole was

misrepresented in respondent's advertising. And we think those misrepresentations went beyond permissible 'puffing' of a seller's wares; that they were material representations on which credulous persons, eager to reduce, were entitled to rely. Despite subtle qualifying phrases it is difficult to read these advertisements as a whole without receiving the impression that, contrary to facts justifiably found by the Postmaster General, kelp is a sure and drastic weight reducer; that a user can reduce without uncomfortably restricting his usual ample diet of fattening foods; that the treatment is absolutely safe and harmless to people of all ages, to the ill and the well. See Donaldson v. Reed Magazine, 333 U.S. 178, 188–189, 68 S.Ct. 591, 596–597, 92 L.Ed. 628. These representations, if made with intent to deceive, fall squarely within the type which in Leach v. Carlile, 258 U.S. 138, 42 S.Ct. 227, 66 L.Ed. 511, were held to justify findings of fraud." Id., 338 U.S. at pages 274–275, 70 S.Ct. at page 113.

We deem such language to be relevantly appropriate in the instant case.

However, the Supreme Court denied enforcement of the fraud order on the ground that there had been an undue restriction on respondent's right of cross-examination of the Government's expert medical witnesses. In this connection the Court stated:

"Moreover, the issues in postoffice fraud cases make such cross-examination peculiarly appropriate. Proof of fraudulent purposes is essential—an 'actual intent to deceive.' See Seven Cases v. United States, 239 U.S. 510, 517, 36 S.Ct. 190, 193, 60 L.Ed. 411, L.R.A.1916D, 164. Consequently fraud under the mail statutes is not established merely by proving that an incorrect statement was made. *An intent to deceive might be inferred from the universality of scientific belief that advertising representations are wholly unsupportable;* conversely, the likelihood of such an inference might be lessened should cross-examination cause a witness to admit that the scientific belief was less universal than he had first testified." (Emphasis added.) Id., 338 U.S. at page 276, 70 S.Ct. at page 114.

What the Court has thus stated about a "universality of scientific belief" does not raise a standard in the case before us by which the uncontradicted testimony of Dr. Campbell can be measured and found short, aside from any question relating to limitation of cross-examination.

■ In the district court Owen raised six procedural objections in support of its contention that the fraud order is null and void, in addition to its claim relating to insufficiency of the evidence. These may be briefly stated as follows: (1) the Rules of Practice, Procedure and Organization of the Post Office Department violate the Administrative Procedure Act; (2) the settlement affidavit filed in the prior proceedings bars the instant administrative proceedings; (3) the administrative decision is premised upon material which is not contained in the administrative record; (4) the hearing examiner erroneously limited cross-examination of the Government's expert witness; (5) the hearing examiner erred in refusing to direct the production of prior opinions submitted by Government's expert witness; and (6) the hearing examiner erred in excluding evidence proffered by Owen relating to the documentary foundation for the opinions of the Government's expert witness. In view of its disposition of the case, the district court did not find it necessary to consider these six issues.

In light of the language of the Supreme Court in Reilly v. Pinkus with reference to the limitation of cross-examination and its further comment emphasizing "the importance of limiting Postoffice Department orders to instances where actual fraud is clearly proved" (id., 338 U.S. at page 277, 70 S.Ct. at page 115), we find it both advisable and

necessary for the trial court to consider and pass upon these procedural objections raised by Owen.

The judgment of the district court is reversed, and this cause is remanded for consideration of the issues not passed upon and for any further proceedings not inconsistent with this opinion.

Reversed and remanded.