**UNITED STATES of America**

**v.**

**An Article of Device . . . DIA-PULSE MANUFACTURING CORPORATION OF AMERICA.**

**No. 4818.**

United States District Court
D. Connecticut.

May 24, 1967.

---

See also D.C., 262 F.Supp. 728; D.C., 41 F.R.D. 46.

Jon O. Newman, U. S. Atty., Hartford, Conn., Charles Marr, Department of Health, Ed. & Welfare, Washington, D. C., for plaintiff.

Jason E. Pearl, Nair & Pearl, New Britain, Conn., for claimant, Diapulse Mfg. Corp.

Milton O. Bass, Bass & Friend, New York City, Jacob D. Zeldes, Lawrence W. Kanaga, Bridgeport, Conn., for claimant, C. I. T. Leasing Corp.

## RULING ON MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND FOR A NEW TRIAL

BLUMENFELD, District Judge.

This is an in rem action against a device which the Government alleged was misbranded. Pursuant to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 334(a) and (b) (Supp.1965), the Food and Drug Administration seized one "Diapulse" machine, and filed a libel of information against it in the United States District Court for the Northern District of Georgia. The libel alleged that the machine was misbranded, i. e., that the labeling of the device was "false or misleading in any particular." 21 U. S.C. § 352(a) (1964). After the intervention of the Diapulse Corporation as claimant, this action was removed to this district, 21 U.S.C. § 334(b) (Supp. 1965), tried to a jury, and a verdict returned for the libelant, the United States, specifically finding the device to be misbranded. On special interrogatories, the jury found misbranding to be present as to 49 diseases, disorders and conditions, and made no finding as to the remaining 68 diseases, disorders, or conditions claimed by the Government.

In accordance with the verdict of the jury, this court has entered an order declaring the device to be misbranded, and in its discretion, pursuant to 21 U.S. C. § 334(d) (Supp.1965), has given the Diapulse Corporation an opportunity to relabel the device to bring its labeling within the law, rather than ordering the device to be destroyed. E. g., United States v. Allan Drug Corp., 357 F.2d 713 (10th Cir.), cert. denied, 385 U.S. 899, 87 S.Ct. 203, 17 L.Ed.2d 131 (1966); Buticaps, Inc. v. United States, 102 U.S. App.D.C. 253, 252 F.2d 634 (1958); Research Laboratories, Inc. v. United States, 167 F.2d 410 (9th Cir.), cert. denied, 335 U.S. 843, 69 S.Ct. 65, 93 L.Ed. 393 (1948).

The claimant has moved for a judgment notwithstanding the verdict and, in the alternative, for a new trial. Rules 50(b) and 59, Fed.R.Civ.P. Both of these motions will be considered together.

## I. *Labeling*

■ A device is misbranded "[i]f its labeling is false or misleading in any particular." 21 U.S.C. § 352(a) (1964). The claimant contends that certain materials, particularly medical reprints, which were seized with the device in the office of an Atlanta chiropractor, do not constitute labeling. The Food and Drug Act, 21 U.S.C. § 321(m) (1964), expressly defines labeling as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) *accompanying such article.*" (Emphasis added). As far as the machine's operating instructions are involved (Gov.Ex. 1), they were actually pasted on the machine, and obviously constitute labeling. The bulk of the labeling, though, consists of reprints from medical journals, and it is these at which claimant's strongest arguments are leveled.

■■ The purpose of the Food and Drug Act is to protect the consumer; it was not Congress' intent to draw a distinction between groups of spurious claims on the basis of whether or not those claims were physically attached to the product, or whether those claims were sent out at a later date. The word "accompanying" has been given a broad interpretation and comprises any materials which are intended to make claims or refer to a product, regardless of whether they accompanied the product in time or in presence, or in neither. The crucial factor is that the device "and the literature had a common origin and a common destination. * * * [T]he products * * * and the literature were interdependent." Kordel v. United States, 335 U.S. 345, 348, 69 S.Ct. 106, 109, 93 L.Ed. 52 (1948). United States v. Urbuteit, 335 U.S. 355, 69 S.Ct. 112, 93 L.Ed. 61 (1948); United States v. Articles of Drug, 263 F.Supp. 212, 214 (D.Neb.1967); United States v. Seven Jugs, etc., 53 F.Supp. 746, 755 (D.Minn. 1944); accord, United States v. Kaadt, 171 F.2d 600 (7th Cir. 1948).

"One article or thing is accompanied by another when it supplements or explains it, in the manner that a committee report of the Congress accompanies a bill. No physical attachment one to the other is necessary. It is the textual relationship that is significant." Kordel v. United States, supra, 335 U.S. at 350, 69 S.Ct. at 109.

■ The only other objection to this labeling would rest on the claim that the reprints were not authored by the Diapulse Corporation, but merely sent out by it. There is no basis in law for such a distinction, for the dispenser of literature is as responsible for its contents as if he had been its author. E. g., V. E. Irons, Inc. v. United States, 244 F.2d 34, 40, n. 6 (1st Cir.), cert. denied, 354 U.S. 923, 77 S.Ct. 1383, 1 L.Ed.2d 1437 (1957). Accord, United States v. John J. Fulton Co., 33 F.2d 506 (9th Cir. 1929); Moretrench Corp. v. FTC, 127 F.2d 792, 795 (2d Cir. 1942).

## II. *Failure to Reveal Differences of Opinion*

■ Claimant states that the court was in error in charging the jury that if it found a material difference in scientific opinion as to the merits of the device, and if it further found that claimant failed to reveal this difference of opinion, then this failure could be employed by the jury as a method of reaching a finding of misleading labeling.

21 C.F.R. § 1.3 (1967) states without equivocation:

"The existence of a difference of opinion, among experts qualified by scientific training and experience, as to the truth of a representation made or suggested in the labeling is a fact (among other facts) the failure to reveal which may render the labeling misleading, if there is a material

weight of opinion contrary to such representation."

To the same effect, see the Food and Drug Act, 21 U.S.C. § 321(n) (1964).

Claimant states, though, that even if this is the law, it was prejudiced by not being apprised in advance of such a claim. It states, "[i]f such an issue had been raised, the libelant would have been required, in pre-trial discovery, to specify precisely what it is claimed that claimant has omitted from its labelling." But, by operation of the statute, the allegation of false and misleading labeling puts this in issue. There was nothing to stop claimant from specifically asking this question in its interrogatories, although it is hard to determine how libelant's answers could have been different than they were. Claimant makes no claim—nor can it—that it was taken by surprise by the existence of reports adverse to Diapulse, for those reports were always at the heart of the trial. Rather, its claim seems to be that it was taken by surprise by the use to which these reports were put, as a theory of proof. The jury was free to believe, or not to believe, that the claimant had knowledge of adverse reports. Even more to the point, the charge on this issue related especially to evidence elicited on cross examination by the Government of claimant's own witnesses, to the effect that the claimant did not fully or accurately publish the results of its own tests, all this being information peculiarly within the knowledge of the claimant and not discoverable from the Food and Drug Administration. Considering the generally gross and flagrant abuse by counsel on both sides during the pre-trial discovery process—an abuse so pronounced that the Chief Judge of this district requested the United States Attorney to intercede for the purpose of enforcing more proper behavior during pre-trial process [1]—it ill behooves the claimant to complain that this particular issue was not framed clearly enough by the interrogatories.

### III.  Difference of Opinion Among Experts

As is usual in a trial which hinges on effectiveness of certain treatments or cures, each side produced expert witnesses; and, as is to be expected, the witnesses disagreed with each other as to the effectiveness of the device. According to claimant, this constituted a bona fide difference of opinion and precluded a finding of mislabeling, since proof of falsity of statements must be found as a fact, and a difference of opinion precludes a factual determination.

Claimant, however, has confused the present action which requires the Government to prove that certain statements are false or misleading with an action for fraud, which requires an intent to deceive. Whether the device was capable of performing that which was claimed for it is the ultimate question for the jury, and the only way in which it could make this determination was to weigh the expert testimony. This testimony consisted not only of the personal observations of the witnesses, but also the witnesses' opinions as to the consensus in the scientific community. As 21 C. F.R. § 1.3, supra, makes clear, the existence of a consensus of medical opinion is a fact and is provable as such. United States v. Wood, 226 F.2d 924 (4th Cir. 1955); United States v. Kaadt, supra, 171 F.2d 600, 603–604; see United States v. Dr. David Roberts Veterinary Co., 104 F.2d 785 (7th Cir. 1939). At one time, it is true, the Supreme Court indicated that honest differences of opinion as to the curative effect of a product would rescue a statement from being adjudged falsely or fraudulently advertised. American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 103–107, 23 S.Ct. 33, 47 L.Ed. 90 (1902). But shortly after a similar decision, United States v. Johnson, 221 U.S. 488, 31 S.Ct. 627, 55 L.Ed. 823 (1911), Congress amended the Food and Drug statute to forbid "false and fraudulent" representations pertaining to curative ef-

---

1. Memorandum of Decision on Claimant's Objection to Interrogatories, July 20, 1966.

fectiveness. Act of June 30, 1906, as amended, 37 Stat. 416 (1912). This change was quickly accorded recognition by the Supreme Court. Seven Cases v. United States, 239 U.S. 510, 36 S.Ct. 190, 60 L.Ed. 411 (1916).[2] Thus, the *McAnnulty* Court's holding that curative value in the face of conflicting opinions could not be found as a fact was undermined by Congress and the court itself within a short period of time. Research Laboratories, Inc. v. United States, supra, 167 F.2d 410. Finally, the Food and Drug Act of 1938 completely put to rest any remnant of a requirement to prove fraud in order to sustain a finding against a claim of effectiveness as a fact, § 502 (a), 52 Stat. 1050, 21 U.S.C. § 352(a) (1964);[3] so that, under the present law, "[w]hat Congress has done is to permit a claim of effectiveness to be found false or misleading where the question of effectiveness is demonstrable as a fact." United States v. Seven Jugs, supra, 53 F.Supp. 746, 757. Cf. Seven Cases v. United States, supra, 239 U.S. 510, 517–519, 36 S.Ct. 190.[4]

· [6] That being the scope of the law, all that a court must find, before submitting the issue to a jury, is that the various allegations as to efficacy are susceptible of factual resolution, i. e., that the issues presented transcend from the realm of opinion into the realm of demonstrable fact. United States v. Seven Jugs, supra, 53 F.Supp. at 758. Accord, United States v. 47 Bottles, 200

F.Supp. 1 (D.N.J.1961), aff'd in relevant part, 320 F.2d 564 (3d Cir.), cert. denied sub nom. Schere v. United States, 375 U. S. 953, 84 S.Ct. 444, 11 L.Ed.2d 313 (1963).

In this case, the evidence demonstrated the existence of scientific standards capable of testing the degrees of effectiveness of a product. Witness after witness testified to the existence of bona fide analytic methods by which scientists can determine effectiveness. Laboratory tests were conducted. Control groups were employed. Just as in *Seven Jugs*, "[t]hese tests were recognized by outstanding men of science as constituting conclusive evidence by recognized scientific standards that the remedies were wholly ineffective." 53 F.Supp. at 759. Research Laboratories, Inc. v. United States, supra, 167 F.2d at 415–416. Cf. Elliott Works, Inc. v. Fisk, supra, 58 F.2d 820.

■ Accordingly, the mere fact of a difference of opinion will not help the claimant; the issue is one of effectiveness and not of fraudulent intent, and hence the jury was properly allowed to determine the truth of the therapeutic claims as it would that of any other fact. V. E. Irons, Inc. v. United States, supra, 244 F.2d 34, 43.

## IV. *Jury Interrogatories* [5]

Claimant's most strenuous objections are reserved for the jury interrogatories.

---

2. The unanimous opinion in *Seven Cases* was written by Mr. Justice Hughes, who only five years before had led the dissent in *Johnson*.

3. The requirement that a food and drug violation be fraudulent is still maintained in the criminal section of the act. See 21 U.S.C. § 333(b) (Supp.1965).

4. Although the court in *Seven Cases* held that the issue of curative effect could be factually examined even in the face of conflicting opinion, it did so on the narrow ground that the statute containing the words "false and fraudulent" was intended to prevent willful deception. Compare Leach v. Carlile, 258 U.S. 138, 42 S.Ct. 227, 66 L.Ed. 511 (1922). It was not too long after this that the courts fully accepted the practice of

treating curative efficacy as a fact. See dissenting opinion of Hughes, J., in United States v. Johnson, supra, 221 U.S. at 499, 504, 31 S.Ct. 627. See also *Seven Jugs*, supra, 53 F.Supp. at 757–758. And see Elliott Works, Inc. v. Fisk, 58 F.2d 820 (S.D.Iowa 1932). A major reason for this turn-about was not only the action of Congress, but a growing recognition that scientific methodology was vastly improved since the days of McAnnulty. Research Laboratories, Inc. v. United States, supra, 167 F.2d at 415; *Seven Jugs*, supra, 53 F.Supp. at 759.

5. Claimant did not pursue this claim on his written briefs, but he objected so strenuously to the interrogatories during the course of the trial that I assume he has not abandoned his claim.

The jury was told that, if it found the device not to be misbranded, it should return a verdict for the claimant. If it found the device to be misbranded, it was to return a verdict for the libelant. Only after, and if, it decided this general question of misbranding in favor of the libelant was it to turn to the special interrogatories.

"If you should find that one or more of the claims has been proved false or misleading, I will ask that you indicate what those claims are. * * *

* * * * * *

"In the event your verdict is for the Government, if you reach the point where your verdict is for the Government, write the word 'yes' in the blank space before each of those [items] for which you find, if you so find, that false or misleading claims were made and have each sheet signed by your foreman. * * *

* * * * * *

"I am not going to ask you to go through the vast list of 120 and deliberate upon each one, but go to those —if you reach them at all, which, in your view, represent the heart of the claims that were made. * * *

* * * * * *

"And still there are too many of them here, 120, to try and manage or even justifiably ask you to pass on each and every one of them. So that is why I say go through the list, but pick out those which you think go to the heart of the claims that are made here and pass only upon those. * * * *"

According to claimant, the jury should have been asked to find definitively as to each and every one of the alleged claims, yes or no. It complains that the entire trial is useless as to those claims on which no finding was made, for as to those, the Diapulse Corporation is no more sure of what it can market the device for than it was before the libel action.

Claimant mistakes the purpose of a court. It is not a pharmaceutical testing house. The machine was condemned pursuant to statute, and that finding of condemnation occurred when the court accepted the jury's verdict in its general form:

"In this case the jury finds the issues in favor of the libelant and therefore finds that the device is misbranded.

"Marion L. Knell, Forman

"Dated: March 17, 1967"

Under Rule 49(b), Fed.R.Civ.P., the general verdict stands as final, unless the special interrogatories are inconsistent therewith. No claim is made that the interrogatories are inconsistent, but rather that the jury should have been asked to find on every single issue of misbranding. This argument is more appropriately addressed to Congress than to the court, for the general issue as to whether or not a specific device is misbranded is all that the statute calls for. The court explained its primary reason for submitting the interrogatories at the time of the charge:

"One reason I am asking that this be done is so that it (your verdict) ought not to be—I don't think it ever is and certainly my charge isn't open to the interpretation that a jury would compromise * * * in that one of you say, 'Well, I think its false and misleading as to that but not this.' And the other one says, 'Well, I think its false and misleading as to this but not that, so I'll agree with you if you agree with me.'"

Thus, the interrogatories were designed to protect the claimant who is now objecting. A second benefit from the interrogatories is the protection they give to both parties. The bases of the jury's verdict, thus particularized, permit the accurate review of both the sufficiency of the evidence and the propriety of its admission.

▮ But to secure these advantages, it was not necessary to require either a "yes" or a "no" to each claim. This would have required the jury to deliberate for days, perhaps even longer. The temptation would be great for purveyors of misbranded products to make literally

thousands of spurious claims; of necessity, the Government in seeking condemnation would not realistically be able to present evidence on so many claims, or if it did, the jury would be unlikely to remember all of them. Since the burden of proof rests on the Government, e. g., United States v. 47 Bottles, supra, 200 F.Supp. 1; United States v. 11¼ Dozen Packages, 40 F.Supp. 208 (W.D.N.Y. 1941), a jury would perforce have to find for the claimant on those claims which it could not remember, or on which the Government, because of the sheer mass of false claims, had not been able to present evidence. Thus, at the cost of sacrificing one device or sample of a product because only a few of the misbranding claims were found proved, a claimant would have obtained a judgment constituting a bar to any future action against all the rest of its devices on the remaining claims, spurious though they may be.

The jury was not required to answer all of the interrogatories.

## V. *The Proof*

The jury could well have found that the experts of the claimant failed, in their tests, to use proper scientific methods, that the tests submitted by the Government were performed properly, and that the machine was useful for very little. As for the allegation that a number of the claims found by the jury to constitute mislabeling were never proved to have been made, the jury could have found, as it apparently did, that diseases, disorders, or conditions mentioned in the medical reprints constituted claims of effectiveness. For example, Gov.Ex. 1–C is a report dealing with the treatment of arthritis with Diapulse. The second paragraph begins—"The acute febrile types of arthritis include rheumatic fever, Reiter's syndrome, hypersplenism, undulant fever, tuberculosis, gonnorrhea, syphilis, tularemia, typhoid fever, serum sickness and other systemic infection and metabolic disturbances." The jury could well have found that these conditions

were presented in such a way as to suggest that the general discussion of arthritis which followed was intended to include them as well. In any event, other findings by the jury, such as infections, otitis media, and stimulation of the reticuloendothelial system, were amply supported. Only one false or misleading claim is needed to sustain the verdict. United States v. 6 Dozen Bottles, 158 F.2d 667 (7th Cir. 1947); United States v. Dr. David Roberts Veterinary Co., supra, 104 F.2d 785, 788.

The motions for judgment notwithstanding the verdict and for a new trial are denied.